# George W. Potter, Appellant, v. The Scranton Traction Company.

*Railroads—Street railways—Change of motive power—Municipal consent.*

A traction company chartered after the constitution of 1874 cannot of its own authority make any change of motive power which will increase the servitude of the streets, without municipal consent, and it is a matter of very serious doubt whether it can do so after 1874, by virtue of implied but unused powers under a charter previously granted.

A street railway chartered prior to 1874 changed its motive power from horses to electricity in 1888 without express municipal consent, and continued to run its road as a trolley system to 1893 without any municipal dissent or challenge. *Held*, (1) that whether municipal consent was necessary or not, it must be presumed in an action by a private citizen against the company; (2) that the trolley road and its necessary appliances cannot be held to be a nuisance per se.

*Street railways—Right to occupy track for ordinary repairs.*

When a street railway company has the right to maintain a trolley line, it has the right, as a matter of course, to repair the same from time to time, and to use all necessary and ordinary appliances in doing so.

*Street railways—Paramount right for repairs.*

The right of repairs to a trolley railway existing as appurtenant to the right to maintain the line, the right of the company to occupy the track for that purpose with a usual and ordinary appliance for a reasonable time is superior or paramount to the right of any casual traveler to an unobstructed use of the street.

Argued Feb. 28, 1896. Appeal, No. 190, Jan. T., 1896, by plaintiff, from judgment of C. P. Lackawanna Co., Jan. T., 1894, No. 37, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass for injuries arising from fright of a horse. Before LYNCH, A. L. J.

At the trial it appeared that the People's Street Railway of Luzerne county was incorporated by act of assembly March 23, 1865. Under this charter the company soon after built a line of street railway from Scranton to Dunmore, and upon Blakely street, in the borough of Dunmore, where this accident occurred. From the time of its construction down to 1888, about twenty-two years, the line was operated with horses as the motive

power.   In 1888 the motive power was changed, and the trolley system adopted.   Poles and wires were erected on Blakely street, among others, but without the municipal consent of the borough of Dunmore.   In 1892 the People's Company leased the line to the Scranton Traction Company.

Plaintiff offered to show by the borough records that the Scranton Traction Company did not obtain permission from the Dunmore authorities to continue the use of the poles and wires which the People's Company had erected and had been using without permission.   This offer was overruled and bill sealed for plaintiff. [1]

On the 30th of March, 1893, the employees of the Scranton Traction Company were at work on Blakely street in the borough of Dunmore, repairing the trolley wire over their railway track.   They commenced at seven o'clock in the morning, a considerable distance below the intersection of Blakely and Drinker streets, and were working up toward Drinker street. To reach the trolley wire, about eighteen feet above the track, they were using an appliance consisting of a combination of ladders, braces and iron rods, and a platform at the top from fourteen to sixteen feet high.   This appliance was not in use by the company before this morning, and was different from those before in use.   Those previously used being an appliance on a wagon, drawn by horses.

The plaintiff carried on the business of a butcher.   On the morning in question he started with his team from his shop to deliver meat to his customers.   There was evidence that his horses were accustomed to the cars and also to the appliances before used to reach and repair the trolley wire.   There was also evidence that they had run away once or twice.   As Potter turned the corner from Drinker into Blakely street defendant's appliance was standing on the track between the rails on Blakely street at a distance from Drinker street, variously estimated by the witnesses, of from 30 to 80 feet.   One of defendant's employees was on the platform at the top of the ladders and hammering on the hangers of the trolley.   Another employee was on the ladder near the ground.   As the team approached this appliance they frightened and the pole of the wagon struck against a pole planted on the curb line.   Potter was thrown violently to the ground and sustained very severe and permanent injuries.

The court charged the jury in part as follows:

Perhaps, gentlemen, the best way of getting at the true issue in the case is to state what is not in dispute. Therefore, permit me to call your attention to what is not in dispute, so far as the jury will pass upon the questions at issue. By the act of the 23d of March, 1865, the People's Street Railway Company of Luzerne county was incorporated. Under the provisions of that act the company had a right to lay out and construct a railway, with one or more tracks, with turnouts and sidings, from or near Scranton to Providence, Hyde Park and Dunmore; to connect with any other railroad now constructed or that may hereafter be constructed, and to carry passengers and freight along such routes and streets as may be used by said railway. They were to commence the railway at any time within three years from the passage of the act, and the completion of one mile thereof is to perpetuate all the rights granted.

It also provides in the sixth section, that the company incorporated shall be subject to all the provisions and entitled to all the privileges of the act of 19th of February, 1849, so far as they are not altered and supplied by this act.

Gentlemen, under the provisions of that act, the People's Street Railway Company built the line in question many years ago, and operated it as a horse car line until 1888, when it was reconstructed and made an electric railway. The necessary poles and wires and other appliances required to operate a road of that character were then constructed in the borough of Dunmore. In 1892 the road thus reconstructed and equipped was leased to the present defendant, who has operated it since.

It is agreed that the present defendant is incorporated under the act of 22d of March, 1887, which provides for the incorporation and regulation of motor power companies, for operating passenger railways by cable, electrical, or other means. The first section provides, that corporations may be formed, in the manner hereinafter mentioned, by the voluntary association of five or more persons, for the construction and operation of motors and cables, or other machinery for supplying motor power to passenger railways, and the necessary apparatus for applying the same; provided that no company which may hereafter be incorporated under this act shall enter upon any street for the purpose of constructing thereon or therein any such

motors, cables, or other appliances, until after the consent to such entry of the councils of the borough, town or city in which said street may be located shall have been obtained. Then, when so formed, the corporation shall have power to lease the property and franchises of passenger railway companies, which they may desire to operate, and to operate said railways.

Counsel for the plaintiff have, in substance, asked the court to say that the maintenance of poles and wires, used in the operation of this railway, on Blakely street, in the borough of Dunmore, was, at the time in question, a nuisance, and, therefore, the question of the company's negligence in this case did not arise. I decline to so say to you, and, in brief, for these, among other reasons: The company organized in 1865 or 1866 was operated as a horse car road until 1888 without, so far as it appears in this case, objection by any one. The electric appliances were erected on Blakely street and operated by the company until 1892. In 1892 the defendant company leased that line as it then was; it did not construct it, it did not erect it, it simply took it as it was, and at the time in question was repairing it. Therefore, if under other circumstances, the company might possibly be said to maintain a nuisance, they could not in this proceeding, and [I therefore say to you, that the company had the right, at the time in question, to occupy Blakely street, with its railroad, its cars, its poles, and its wires. That question, therefore, is not in the case for you to dispose of.] [2]

What are the questions upon which you are to pass, and what is the law governing those questions? In substance the plaintiff's declaration sets out, that the company was, at the time Mr. Potter was hurt, operating an electric railway in the borough of Dunmore; that the company negligently and carelessly set up the ladder in question; that it was an unusual, uncommon and extraordinary appliance, and that he, without fault on his own part, was hurt by reason of the appliance being in the street.

The plaintiff charges the defendant with negligence in maintaining this apparatus or appliance in Blakely street. The mere fact that an accident occurred by which Mr. Potter was hurt proves nothing, except that he was hurt. It does not prove negligence upon the part of the company. He asserts that they

were negligent in the management and use of this appliance, and, therefore, he must prove that assertion by the fair weight or preponderance of the evidence.

First, what was the appliance or apparatus? It is not necessary for me to go over the evidence with reference to it; you have seen a part of it, and have seen the model, and you have heard the witnesses, many of them experienced, intelligent men. The Street Railway Company had the right, and I may say it was the Street Railway Company's duty, having laid its tracks, and operating the road under its charter, to occupy Blakely street with its cars, its poles, its wires, and with the proper sort of an appliance for the repair of those wires. They had not a paramount right, an exclusive right to the use of the street, but they had an equal right with other travelers upon the highway; they had an equal right with Mr. Potter upon the street, no greater and no less. They had the right, while their cars were passing upon the track, to use this appliance, if it were an usual and ordinary one, upon the track for a reasonable time for the purpose of allowing them to repair the overhead hanger or wire. [Their right for a reasonable time, with a proper appliance, was paramount and greater than the right of Mr. Potter;] [3] in other words, it was not only their right, but their duty to keep their trolley in good order.

What is the negligence complained of? That the company erected, at a distance of about seventy or eighty feet on Blakely street from the corner of Drinker, within the track, as I think all the witnesses, except Mr. Boyle, testified, a ladder; that it was an unusual appliance, was of extraordinary character, well calculated or tended to frighten docile, well-broken, gentle horses; that on the morning in question it, and the men upon it, did frighten his gentle, well-broken team, and that by reason of that fright he was injured. It is not denied that this appliance was located there, and in fact there is very little dispute as to where it was erected; that it was in the middle of the railway track is substantially agreed upon; its height, shape, size, color, what the man on top of it or near the top was doing, what the men at the bottom were doing. All these, I say, are substantially agreed upon, so that you will probably have very little difficulty in passing upon those questions. The company had the right, at that time and place, to erect and keep there for a

reasonable time, while they were repairing the overhead trolley, a proper appliance or apparatus, such an one as would not naturally tend to frighten well-broken and docile horses. . . .

Gentlemen, if you shall ascertain from the fair weight of the credible evidence that this apparatus, this ladder, and the men upon it at work there, was not of unusual and extraordinary character, and that it did not naturally tend to frighten well-broken and docile horses, even though it frightened some, that would end this case, and you should return a verdict for the defendant.

Verdict and judgment for defendant.

*Errors assigned,* among others, were (1) ruling on testimony, quoting the bill of exceptions; (2, 3) portions of charge specified above, quoting them.

*I. H. Burns* with him *Ward & Horn,* for appellant.—Without this municipal consent these poles and wires had no right to be on the street. If they had not, then the putting of them there was negligence in itself. He who constructs or maintains a public nuisance in the highway is liable for the resulting damage, irrespective of any question of negligence: Elliott on Streets and Roads, p. 477; Wood on Nuisance, sec. 248; Athens v. Sayre, 156 Pa. 28.

A bone boiling establishment does not cease to be a nuisance because maintained by a lessee: Congreve v. Smith, 18 N. Y. 79; Irvine v. Wood, 51 N. Y. 224.

As to the effect of a condition precedent unperformed, see Allegheny City v. Millville Ry., 159 Pa. 411; Larimer Ry. Co. v. Ry. Co., 137 Pa. 547; Crosswell on Electricity, sec. 144.

The court erred in charging as follows:

" Their right for a reasonable time, with a proper appliance, was paramount and greater than the right of Mr. Potter: Bisbing v. Bank, 93 Pa. 79; Gibbons v. Ry., 155 Pa. 281.

*Everett Warren* and *W. H. Jessup* with them *Horace E. Hand* and *W. H. Jessup, Jr.,* for appellee.—First and second assignments of error.

We claim: First. That street railways are bound to furnish all necessary facilities in the way of rapid transit to their patrons.

and adopt all new and useful inventions for the purpose of effectuating the same, unless they are specifically restricted by their charter to some particular method of locomotion, and

Second. That the People's Street Railway Company of Luzerne county possess to-day all the powers which they possessed prior to the adoption of the constitution of 1873.

As to the first point: This question has not been specifically decided in Pennsylvania: Reeves v. The Traction Co., 152 Pa. 153; Philadelphia v. Ridge Ave. Ry. Co., 143 Pa. 444, 472; Incline Plane R. Co. v. Telegraph Assn., 46 Am. & Eng. R. R. Cases, 588; Halsey v. Railway Co., 46 Am. & Eng. R. R. Cases, 76; 47 N. J. Equity Rep. p. 380; Taggart v. Ry. Co., 16 R. I. 668; Telegraph Co. v. Rich, 19 Kan. 517; Koch v. Railway Co., 23 Atl. Rep. 463.

It is also held by this court that the use of the public street for purposes of street railways is not the imposition of an additional servitude upon such street: Rafferty v. Central Trac. Co., 147 Pa. 579; Lockhart v. Craig St. Ry., 139 Pa. 419; Keasbey on Electric Wires, sec. 15, p. 18.

An unauthorized railroad upon a public street is a nuisance: Faust v. Ry. Co., 3 Phila. 164.

A sufficient answer to this question might be that the right to build the railroad is not denied. Now our charter antedates the constitution, and all rights to build, maintain, and operate our road remain the same and can be exercised as fully as if the constitution had contained no such provision: Hays v. Commonwealth, 82 Pa. 518; Ahl v. Rhoads, 84 Pa. 319; Wagner Institute v. Philadelphia, 132 Pa. 612; Williamsport Pass. Ry. Co.'s Appeal, 120 Pa. 1; Gloninger v. R. R. Co., 139 Pa. 13.; Piolett v. Simmers, 106 Pa. 110.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

The main contention in this case is that the railway company not having the express consent of the borough to use the trolley system on its road, was so far a trespasser ab initio that its appliances both for running and repairing were nuisances, and as against the appellant constituted negligence in law. The discussion of this proposition would require the consideration of two questions, first the right of the People's Street Railway Company to use the trolley system on its road, and secondly,

the additional right, if any, acquired by its lessee, the Traction Company, under its own charter. The People's Company was chartered by special act, March 23, 1866, P. L. 1199, as a street passenger railway, without mention of motive power. The road was operated by horse power until 1888, when the company without express consent of the borough, but without objection either from the borough or any abutting property owner, changed its motive power to the electric trolley system. The Scranton Traction Company was incorporated under the act of March 22, 1887, P. L. 8, with an express right to use " electrical or other appliances," but subject to the consent of the borough. In 1892 it leased the people's line, and continued to operate it by the trolley system, without express consent, but without objection by the borough.

How far the franchise for a passenger railway, without specific limitations or prohibitions as to motive power, carries with it the right from time to time to operate it by new methods, developed in the progress of invention and experience, is an important question which was referred to but not decided in Reeves v. Phila. Traction Co., 152 Pa. 153, and in this case it is complicated by the fact that the change was not made until after the adoption of the present constitution. It is clear that the Traction Company, chartered since the constitution, could not of its own authority make any change of motor power which would increase the servitude on the street, without the municipal consent. Whether the People's Company could do so, after 1874, by virtue of implied but unused powers under a charter previously granted, is a matter of very serious doubt.

. But we do not think the appellant is in position to raise the question. The change from horse power to trolley was made in 1888, and the new motor continued in use first by one company and then by the other, without objection, for five years before this accident occurred. Whether the consent of the borough was necessary or not, it must be presumed in this action by a private citizen. Consent may be by ratification as well as by previous permission, and it was held in Pa. Schuyl. V. R. R. Co. v. Phila. & Reading R. R., 160 Pa. 277, that at least as to private parties, if not as to the municipality itself, consent may be waived by acquiescence without objection, in a long continued act. We are of opinion that under the facts of the present

case, the trolley line must be presumed to have been rightfully on the street, and therefore not a public nuisance which entitles appellant to ask a ruling that its maintenance is negligence per se.

Having the right to maintain its line, the appellee of course had the right to repair it from time to time, and to use all necessary and ordinary appliances in doing so. The learned judge so charged, and though his use of the word "paramount" in reference to such right is assigned for error, yet it is only made such by separation from its context. The jury were told the company "had not a paramount right, an exclusive right to the use of the street, but they had an equal right with other travelers on the highway; they had an equal right with Mr. Potter upon the street, no greater, no less. They had the right . . . . to use this appliance, if it were an usual and ordinary one, upon the track for a reasonable time to repair the overhead wire. Their right for a reasonable time was paramount and greater than the right of Mr. Potter." This was a correct statement of the law. It was no more than an illustration of the general rule, that although the right of a street railway even to that part of the street occupied by its rails is only in common with that of other travelers, yet where its right to be available at all must be exclusive, as, for example, for unobstructed passage, it is of necessity for the time being superior or paramount: Ehrisman v. Harrisburg R. W. Co., 150 Pa. 180.

The remaining assignments do not require further discussion. Taken in their connection as they occurred in the charge, the expressions of the learned judge were substantially correct, and could not have misled the jury to appellant's injury.

Judgment affirmed.