## Howley, Appellant, v. Central Valley Railroad Company.

*Railroads—Motive power—Construction of road—Electricity—Steam—
Acts of Feb. 19, 1849, P. L. 79, and April 4, 1868, P. L. 62.*

A railroad company incorporated under the Act of April 4, 1868, P. L. 62, and "entitled to exercise all the rights, powers and privileges, and be subject to all the restrictions and liabilities" of the Act of February 19, 1849, P. L. 79, is not restricted to steam as a motive power, but may use electricity.

In the absence of a limitation upon the power of a railroad company to use any appliances, or of a prohibition as to the use of any particular one, it is the duty of the company to use what, in the light of its observation and experience, is best and most convenient for it in the operation of its road, having at all times due regard to the safety of the public which it was created to serve. In such a case its duty fixes the measure of its powers in performing it. What it manifestly ought to do in exercising its franchises it may do, unless forbidden by its supreme law—the will of its creator as expressed in the words giving it life.

The fact that the courts have designated railroads organized under the act of April 4, 1868, as steam railroads, is immaterial, since this designation has been used only as a natural one to distinguish such railroads from street passenger railways, and in no case in which it is used is there any intimation as to the limitation upon the power of the railroad company in the adoption of its motive power.

Argued April 13, 1905. Appeal, No. 91, Jan. T., 1905, by plaintiff, from decree of C. P. Luzerne Co., March T., 1903, No. 1, dismissing bill in equity in case of Martin Howley v. The Central Valley Railroad Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction to restrain the construction of a railroad company to be operated by electricity. Before HALSEY, J.

From the record it appeared that the defendant company was incorporated under the Act of April 4, 1868, P. L. 62.

The prayer of the bill was as follows:

" That the court issue a perpetual injunction directed to the defendant, restraining said defendant and all persons claiming to act under its authority, direction or control from constructing or operating an electric railway over and upon the above described land appropriated from the plaintiff or between the cities of Wilkes-Barre and Pittston, and further restraining the

defendant from laying over and upon the above described land a " third rail " or any other appliance or thing peculiarly and solely adapted to the equipment or operation of an electric railway."

Other facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Charles L. McKeehan* with him *M. N. Donnelly* and *John McGahren,* for appellant.—The railroad act of 1868, and its supplements, do not either expressly or by reasonable implication confer upon a corporation chartered thereunder the right to use electricity as a motive power, and under these circumstances, the right of such a corporation to use such motive power is a legislative and not a judicial question : Potts v. Quaker City Elevated R. R. Co., 161 Pa. 396 ; Emerson v. Com., 108 Pa. 111 ; Scranton Electric Light & Heat Co's. App., 122 Pa. 154; Watkin v. Pass. Ry. Co., 1 Pa. Dist. Rep. 463 ; Reeves v. Traction Co., 152 Pa. 153 ; Potter v. Traction Co., 176 Pa. 271 ; Potts v. R. R. Co., 161 Pa. 396 ; Rahn Twp. v. St. Ry. Co., 167 Pa. 84.

The court will take judicial notice of the fact that electricity was not known as a motive power on railroads in 1868 : Scranton Electric Light & Heat Co's. App., 122 Pa. 154.

A citizen over whose land a railroad company constructs and operates its road under the right of eminent domain, is a proper party to test the right of said company to operate the road by electricity: Sterling's App., 111 Pa. 35; Gaw v. R. R. Co., 196 Pa. 442; Germantown Pass. Ry. Co. v. Ry. Co., 151 Pa. 138; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Packard v. Thiel College, 209 Pa. 349.

*H. B. Gill,* with him *C. F. Bohan* and *James H. Torrey,* for appellee.—The plaintiff had no standing to maintain this bill: Lockhart v. Ry. Co., 139 Pa. 419; Penna. R. R. Co. v. Ry. Co., 167 Pa. 62 ; Hilt v. R. R. Co., 43 W. N. C. 429 ; Pittsburg, etc., Ry. Co. v. Peet, 152 Pa. 488 ; Junction R. R. Co. v. Phila., 88 Pa. 424; Speese v. R. R. Co., 23 Pa. C. C. Rep. 17 ; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459.

There is no evidence as to the extent of the use of electricity

as a motive power in 1868 and no decree can be entered based on any alleged absence of the use thereof.

The pending bill in equity between the defendant, the Central Valley Railroad Company, and the plaintiff, Martin Howley, and others, is a bar to the plaintiff's bill in this case: Railroad Co. v. Erie, 27 Pa. 380.

The defendant has the right to use electricity as a motive power: Lonergan v. Ry. Co., 3 American Electrical Cases, 273; Halsey v. Rapid Transit Street Ry. Co., 47 N. J. Eq. 380 (20 Atl. Repr. 859); Wilmington City Ry. Co. v. Ry. Co., 46 Atl. Repr. 12; Ogden City Ry. Co. v. Ogden City, 26 Pac. Repr. 288; Newport v. Newport Light Co., 89 Ky. 454 (12 S. W. Repr. 1040); Paterson Ry. Co. v. Grundy, 51 N. J. Eq. 213 (26 Atl. Repr. 788); Taggart v. Ry. Co., 16 R. I. 668 (19 Atl. Repr. 326); Buckner v. Hart, 52 Fed. Repr. 835; Hudson River Tel. Co. v. Watervliet Turnpike and Ry. Co., 135 N. Y. 393 (32 N. E. Repr. 148); Williams v. Ry. Co., 41 Fed. Repr. 556; Millvale Boro. v. Ry. Co., 131 Pa. 1; Reeves v. Traction Co., 152 Pa. 153; Com. v. West Chester, 9 Pa. C. C. Rep. 542; Gaw v. R. R. Co., 196 Pa. 442; Watkin v. Ry. Co., 1 Pa. Dist. Rep. 463; Potter v. Traction Co., 176 Pa. 271.

OPINION BY MR. JUSTICE BROWN, October 9, 1905:

The appellee is a railroad company incorporated under the Act of April 4, 1868, P. L. 62. In addition to locomotive engines it uses electricity as a motive power, which is carried to motors on the cars through a third rail. After locating the route of its road over the land of plaintiff it was unable to agree with him as to the amount of damages which he sustained, and, to secure the payment of the same, a bond was filed and approved by the court of common pleas. After its approval he undertook, by force, to prevent the construction of the railroad upon his property, but, on a bill filed by the company, was perpetually enjoined from so interfering with it. When he subsequently discovered that it intended to operate its road by electricity as one of its motive powers, he filed this bill, under the provisions of the Act of June 19, 1871, P. L. 1360, alleging that it did not possess the right or franchise to so operate its road, and, if permitted to do so, he would be injured in his

property rights.    The court below was of opinion that he could raise this question under the act of 1871, but was precluded from doing so by the injunction perpetually enjoining him from interfering with the construction of the road.    By that decree he was enjoined from interfering with the construction of the road, for the reason that the company had a right to construct it; but if, in the operation of it, after its construction, the appellee undertook to exercise a franchise which it did not possess, to the injury of the plaintiff, he was within the protection of the act of 1871.    More need not now be said on this point. Sooner or later we must pass upon the right of a railroad company incorporated under the general railroad act to use electricity as a motive power, and, for the purpose of doing so now, we regard the question as properly before us.

The Act of February 19, 1849, P. L. 79, was not passed for the incorporation of railroad companies, but for the regulation of those that might thereafter come into existence by special acts of assembly creating them.    Up to that time no general law had been passed providing for their incorporation.    Such an act, providing for their formation and regulation, was passed April 4, 1868, P. L. 62, and under it the appellee was incorporated.    This act provides that each company incorporated under it "shall be entitled to exercise all the rights, powers and privileges, and be subject to all the restrictions and liabilities of the act regulating railroad companies, approved the nineteenth day of February, one thousand eight hundred and forty-nine and the several supplements thereto, as fully and as effectually as if said powers were specially incorporated in said charter."    The charter of the appellee authorizes it to construct, maintain and operate a railroad for public use in the conveyance of persons and property.    The road cannot be operated nor its franchises exercised without motive power; but nothing is stated by the legislature about the kind to be used.    The act is silent upon the subject, and, in the absence of a direction in the statute creating the appellee that any particular power is to be used, the kind to be adopted must be left to the judgment of those operating the road.    In occupying the land of the appellant for railroad purposes the appellee took exclusive possession of it, and, in operating its road upon it, the appellant, who is excluded from it, has had

no additional servitude imposed upon his fee because the cars happen to be moved by electricity instead of by steam. In this respect the case differs from the construction of a street railway upon a public street with municipal consent, for the use of the street is not exclusively in the street railway company, but concurrently used by the public. In Potter v. Scranton Traction Co., 176 Pa. 271, we said : " How far the franchise for a passenger railway, without specific limitations or prohibitions as to motive power, carries with it the right from time to time to operate it by new methods, developed in the progress of invention and experience, is an important question which was referred to but not decided in Reeves v. Phila. Traction Co., 152 Pa. 153, and in this case it is complicated by the fact that the change was not made until after the adoption of the present constitution. It is clear that the traction company, chartered since the constitution, could not of its own authority make any change of motive power which would increase the servitude on the street, without the municipal consent." The foregoing, however, has no application to a case where the land occupied is in the exclusive possession and use of a railroad company. The legislature in granting the power to the appellee to take appellant's land for railroad purposes might have annexed to such a power a condition that but one kind of motive power should be used in moving cars, to the exclusion of all others, but there is no such limitation on the power to take the land or to operate the railroad constructed upon it.

Turning to the act of 1849, to the provisions of which the appellee is subject, there is no limitation found upon the kind of motive power that is to be used by railroad companies. By the second section of the act they are authorized " to purchase, receive, have, hold, use and enjoy goods, chattels and estate, real and personal, of what kind and nature soever, as may be necessary or convenient to the procuring, owning, making, maintaining, regulating and using their railroad, the locomotives, machinery, cars, and other appendages thereof, and the conveyance of passengers, the transportation of goods, merchandise and other commodities." By section 18 it is provided " that upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the con-

veyance of passengers, and the transportation of freight, subject to such rules and regulations, in relation to the same, and to the size and construction of wheels, cars and carriages, the weight of loads, and all other matters and things connected with the use of said railroad, as the president and directors may prescribe and direct: Provided, That the said company shall have the exclusive control of the motive power." Though the owners of cars had the right to have them conveyed on railroads, the motive power conveying them was to be under the exclusive control of the company. What motive power? The motive power which the company had adopted. At that time, as is a matter of common knowledge, several kinds of motive power had been adopted and were in use. Some of the roads were operated by horses, others by inclined planes by means of cables operated by stationary engines, and others by the ordinary locomotive.

But it is contended that the powers conferred by the statutes on the corporations which they create must be construed in the light of conditions existing at the time they were passed, and, in the present case, as electricity was not known as a motive power in 1849, and even in 1868, the appellee has no right to use it and must be confined to the then known motive powers for railroads. If this doctrine were to prevail, the rails of railroads would still be confined to the strap rail, nailed upon wooden stringers, with snake-heads not infrequently forced up through the floors of the cars, instead of the present heavy steel rails insuring the absolute safety of the running of cars; pigmy locomotives, burning only wood, would still haul a few light cars at a slow pace on uncertain schedules, instead of the present massive engines which, with safety and at speed not dreamed of fifty years ago, carry long trains of cars filled with passengers and freight; and the old hand brake would not be supplanted by the air brake. These and many other appliances and devices utterly unthought of in the days of the legislation under which our present railroads came into being, could not be used.

In the absence of a limitation upon the power of a railroad company to use any appliances, or of a prohibition as to the use of any particular one, it is the duty of the company to use what, in the light of its observation and experience, is

best and most convenient for it in the operation of its road, having at all times due regard to the safety of the public which it was created to serve. In such a case its duty fixes the measure of its powers in performing it. What it manifestly ought to do in exercising its franchises it may do, unless forbidden by its supreme law—the will of its creator as expressed in the words giving it life.

In Millvale Borough v. Evergreen Railway Co., 131 Pa. 1, the road of the railway company was originally built and operated as a narrow gauge steam railroad, and it was contended that it could not widen the same to a broad gauge. Of this contention it was said: " It might as well be argued against the proposed change of gauge that because a particular kind of rail was in vogue, and was actually adopted and used by a railroad company at and after the time of the construction of its road, it could never adopt another, but was concluded by its first choice, upon the theory of an exhaustion of its power. It will be seen at once that such an argument is entirely fallacious and untenable. Instead of such being the law, we have always held that railroad companies not only have the right, but are by law bound, to make use of the latest and best inventions and appliances tending to promote the comfort and safety of the public. This is notably the case in the matter of spark-arresters, and is equally applicable to couplings and other contrivances. The writer remembers when the strap rails, laid upon longitudinal stringers and fastened down with spikes, were in common use on steam railroads, and he also remembers that snake-heads at the end of the rails resulted from this method, occasioning frequent accidents and loss of life. When the **T** rails came into use, it became the undoubted legal duty of the old companies to abandon the flat rail, and use the new one, and any company failing to perform this duty would very quickly have received forcible and emphatic admonition to that effect both from juries and courts."

In Halsey v. Rapid Transit Street Railway Co., 47 N. J. Eq. 380, the question of the right of the railway company to use electricity as a motive power was raised, and VAN FLEET, V. C., in delivering the opinion of the court, said : " The right of the defendant to use electricity as its motive power is clear. The defendant was organized under a general statute, authorizing

seven or more persons to associate themselves together, by articles in writing, for the purpose of forming a corporation to construct, maintain and operate a street railway for the transportation of passengers : Rev. Sup. p. 363.   The motive power to be used by corporations formed under this statute is in no way limited or defined ; the statute does not say that they shall use animal, mechanical or chemical power; it says nothing at all on the subject of power ; hence, under the general grant of power to maintain and operate a street railway, it would seem to be clear, that a corporation formed under this statute, takes, by necessary and unavoidable implication, a right to use any force, in the propulsion of its cars, that may be fit and appropriate to that end, and which does not prevent that part of the public which desires to use the street, according to other customary methods, from having the free and safe use thereof. While the rule is elementary that public grants are to be strictly construed, still it is also well established, that where a corporation is authorized, by a general grant, to exercise a franchise or to carry on a business, and the grant contains no words either defining or limiting the powers which the corporation may exercise, it will take by implication, all such powers as are reasonably necessary to enable it to accomplish the purposes of its creation.   I am, therefore, of opinion that if there was no other legislation on this subject than that just mentioned, and that it was made to appear that electricity could be used for the propulsion of street cars without preventing the free and safe use of the street by other means of transportation, the defendant would, by force of the statute under which it was organized, have a right to use electricity as its motive power."

Another case that may be cited is Wilmington City Railway Co. v. The Wilmington Railway Co., Court of Chancery of Delaware, 46 Atl. Repr. 12, where it is held : " It would seem that when the broad term, ' city railway,' is used, the term must be taken to mean only what is essential to the definition of the term, and obviously no particular motive power is essential.   Whenever a statute specifies a motive power to be used, the expression of that power may be construed to exclude any other.   The general rules of construction seem to me to require this.   But, when an exclusive right is given in

general terms to a city railway, the effort to confine it to the particular motive powers in use at the time would seem to be as artificial and unauthorized as to confine it to the kind of rails then in use, excluding the idea of modern rails of steel and of great weight, or to limit the size and shape and quality of cars to those known at the time. All these things, including the motive power, are subordinate—mere means to make the franchise effective; and yet the expression of any of them might be so made as to so limit the grant. When no kind of motive power is mentioned, it should be taken to indicate that the legislature means what it says, 'a city railway,' however propelled, whether by powers then familiar or those they know not of; in fact, any kind of power which the ingenuity of man may contrive that does not constitute an additional burden upon the highway, or an injury and annoyance to the public."

We have, it is true, as is contended by the appellant, designated railroads organized under the act of 1868 as steam railroads : Potts v. Quaker City Elevated R. R. Co., 161 Pa. 396. But this designation has been adopted only as a natural one to distinguish such railroads from street passenger railways, and in no case in which it has been used is there any intimation as to the limitation upon the power of a railroad company in the adoption of its motive power. With this question now before us, we are clear that the appellee is not prohibited from using electricity as a motive power, and if, in its judgment the same ought to be used for the most efficient exercise of its right to operate its railroad, it may be used.

The decree of the court below is, therefore, affirmed, and this appeal dismissed at the cost of the appellant.