# McCully, Appellant, *v.* Pittsburg Railways Company.

*Railroads—Deeds for right of way—Width—Change of gauge—Change of motor power—Steam and electricity.*

Where a deed to a railroad company grants a right of way sixty feet in width with a release of damages and with a right to conduct water by aqueducts and to make proper drains, and "to include all such other rights and privileges as are or may be provided for said company by law, provided however that no further rights are hereby granted than said railroad company is now at present using and enjoying," the grantee has the right to change the tracks from a narrow to a standard

gauge, to change the motor power from steam to electricity, to use any surplus of electricity to bring cars of other affiliated lines to its own terminus, and physically to connect its tracks with those of a street railway at a point not on the right of way embraced in the grant, so as to insure a continuous haul of passengers without change of cars.

Argued April 27, 1910. Appeal, No. 142, April T., 1910, by plaintiffs, from decree of C. P. No. 4, Allegheny Co., Second T., 1909, No. 296, dismissing bill in equity in case of R. L. McCully et al. v. Pittsburg Railways Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Bill in equity for an injunction. Before SWEARINGEN, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*Andrew S. Smith*, with him *Samuel A. Schriener*, for appellants.—The law in force when a contract is made is a part of such contract as fully as if its provisions had been incorporated into such contract.

At the time the contract was made it was not lawful for railroad companies and street railway companies to connect their tracks or interchange traffic. The defendant has constructed a power line over the right of way in question and over plaintiff's land for the purpose of transporting electric power for use in moving and heating cars, but a very large proportion of this power current is to be used for other parts of the defendant's passenger railway system over and above what is necessary to move the cars by electricity on the old Pittsburg & Castle Shannon Railroad which is only about seven miles in length. We submit that by no possible principles of construction could such an invasion of plaintiff's lands be justified under this contract: Cubbage v. Coal Co., 29 Pa. Superior Ct. 341.

When the grant is for a particular purpose the grantee cannot use it for any other: Webber v. Vogel, 159 Pa. 235; Hoosier Stone Co. v. Malott, 130 Ind. 21; Carpenter v. Capital Electric Co., 178 Ill. 29; Proctor v. Campbell, 6 Pa. C. C. Rep. 531; Washburn v. Copeland, 116 Mass. 233.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for appellee.—Ordinarily, a grant of a right of way and a release of damages, such as are contained in the deed in question in this case, are to be construed as vesting in the railroad company the same title and estate as would be acquired by a condemnation of the land: North & West Branch Ry. Co. v. Swank, 105 Pa. 555; Updegrove v. Ry. Co., 132 Pa. 540; Kemp v. R. R. Co., 156 Pa. 430.

As it is the duty of a railroad company to adopt improvements, therefore, if it is believed by the company that the use of electric motive power will be an improvement over the old method, it may and should adopt it: Howley v. R. R. Co., 213 Pa. 36.

The plaintiffs complain here of the fact that at a distant point a connection has been made between the Pittsburg & Castle Shannon Railroad and certain street railway tracks.   This complaint is well answered in Corey v. Edgewood Boro., 18 Pa. Superior Ct. 216.

It is not disputed by the plaintiffs that the Pittsburg Railways Company, the lessee, succeeded to all of the rights of the Pittsburg & Castle Shannon Railroad Company in this line.   The grant itself, as we have seen, was made to the Castle Shannon Company, "its successors and assigns," and the Pittsburg Railways Company has become the "successor" of the Castle Shannon Company by a valid lease: Kaufman v. Pittsburg & Castle Shannon R. R. Co., 217 Pa. 599.

OPINION BY HEAD, J., October 10, 1910:

The Pittsburg & Castle Shannon Railroad Company was incorporated under the general railroad act of 1868

and began the operation of its line of road perhaps prior to 1879. The line has been in continuous operation ever since. This company thus became a common carrier, a quasi public corporation, invested with all of the rights and clothed with all of the obligations which, under the law and policy of this state, are incident to such corporations. Its railroad, as originally constructed, consisted of but a single line of narrow gauge. It is conceded that at some time prior to the filing of this bill the present respondent lawfully succeeded to all of the rights formerly vested in the company named.

By a grant in writing, dated April 27, 1879, the predecessor in title of the present plaintiffs granted and conveyed to said company, "its successors and assigns, a right of way as the same is now located 60 ft. in width at grade and such additional width as is required and necessary in the construction of said road at deep cuttings and embankments to make 60 feet wide at grade. . . . The grant of right of way is for the location on which said R. road is now located and built being operated now. And I hereby for myself, my heirs and assigns, release the said company from any and all damages resulting to me by the location and construction of said railroad through said land and the right to conduct water by aqueducts and the right of making proper drains and to include all such other rights and privileges as are or may be provided for said Co. by law. Provided, however, that no further rights are hereby granted than said railroad company is now at present using and enjoying, to have and to hold the said rights and privileges to the use of said company as same shall be required for the use and purpose of said road in as full, perfect and ample a manner as may be required for that purpose."

It will be perceived at a glance that this instrument does not exhibit the work either of one skilled in the use of the English language or of one familiar with the legal terms which accurately and clearly portray the nature, extent and character of a grant intended to be made. We

therefore agree with the learned counsel for the appellant when he states in his printed brief, "The intent of the parties as to all particulars is not clear."

There are some considerations, however, important in the construction of this instrument which appear to be so plain that we are warranted in saying they must have been in the contemplation of the grantor. He was the owner of a tract of land through which a line of railroad had been located and constructed. He was aware of the benefits and advantages that would result to him from such construction because he declares in the instrument that they furnish the valuable consideration which induced him to make the grant. It is clear that he intended to turn over to the exclusive possession of the grantee the strip of land described, to be used by it in the development and accomplishment of the purpose for which said companies are incorporated by the state.

If we confine our attention to that portion of the grant which deals exclusively with the right of way and nothing else and then look to the clause in the nature of a habendum, there would be no room for doubt that it was the intention of the grantor that the company should thereafter use and enjoy the strip of land in any and every proper way legitimately connected with and incident to the purpose of its creation. After having, by reasonably apt words, completed the main grant itself and described the location and extent of it, the grantor undertook to add a clause in the nature of a release of damages. Within the body of that clause there appears evidence of his intention to make some other specific grants apart from the primary one of the right of way itself, to wit, the right to conduct water by aqueducts and the right of making proper drains. This additional grant, it seems from the language used and its location in the instrument, was "to include all such other rights and privileges as are or may be provided for said Co. by law. Provided, however, that no further rights are hereby granted than said railroad company is now at present using and enjoying."

It is not easy to see how the same number of words could be associated with the effect of making the meaning of the grantor more obscure than those last quoted. It would offend every just rule of construction, however, were we to hold that it was his intention, by their use, to cut down the primary grant of the right of way for railroad purposes and restrict and limit its enjoyment, for all future time, by confining the use of the right of way to such uses as were at that particular time being made of it. Why grant a right sixty feet in width, with the necessary additional widths for slopes and fills, if the grantor intended that the railroad company should never put down additional tracks or never widen the track already there from narrow to standard gauge? The change from narrow to standard gauge, or from single to double track, would be but the evidence of a multiplication of those benefits and advantages which constituted the real consideration of the grant. They would but mark the progress in the settlement of the country, in the increase of its population, in the facility of its modes of communication, and in the quick and easy transportation of persons and property, all of which were the things yet unseen but hoped for by those who promoted or in any way aided the construction of railroads through the country. It would seem, therefore, that the primary grant of the right of way sixty feet wide was not intended to be impaired by the proviso at the end of the clause we have above quoted.

If the proviso has any meaning that can be fairly attributed to it which is not antagonistic to the main purpose of the instrument, the most we can say of it is that it was an attempt to restrict the operation of the clause which had already granted the right to conduct water, make proper drains, and all such other rights and privileges as are and may be provided by law. We can give it no wider significance without substantially impairing if not destroying a separate grant which had been completely made in the earlier part of the instrument.

We do not think we are called upon to discover a pre-

cisely accurate term to express the nature and character of the grant that was made. Whether it more accurately could be called an easement or a base fee is perhaps not of first importance for our purposes. It is quite clear that it is something more than the ordinary easement of way known to the common law. In North and West Branch Railway Company v. Swank, 105 Pa. 555, Mr. Justice TRUNKEY, speaking of such a grant, says: "So far as advised, the popular understanding of a grant of right of way for a railroad is, that it includes all the company may lawfully and adversely take from the grantor for use as a way." This language is quoted with approval in Updegrove v. Railway Company, 132 Pa. 540; Kemp v. Railroad Company, 156 Pa. 430. As to the nature of the estate acquired adversely by a railroad company under the operation of the right of eminent domain, it was said in Railway Company v. Peet, 152 Pa. 488: "The estate acquired by a railroad company by a condemnation of land is often spoken of as an easement, but the term is used in a loose way for the purpose of distinguishing it from a fee." Mr. Justice PAXSON, writing for the court in that case, then goes on to quote some language of a former opinion of the same court in which a number of rights incident to the estate thus acquired, such as the right to exclusively possess it, to fence it, to build over the surface of it, etc., are said to indicate that it might be more appropriate to regard it as a base or conditional fee than an easement at the common law. But this is followed by the declaration that if its essential character be recognized, an exact name for it is not important.

Having thus briefly considered the grant, let us turn our attention for a moment to the things which the railroad company was undertaking to do at the time this bill was filed. It was, as we have intimated, engaged in the process of making its railroad of standard gauge. This was in nowise forbidden by the grant, but was a right possessed by the railroad company, the exercise of which, as we have said, was calculated to promote the main object contem-

plated by the parties when the grant was made. It could be of no legal concern to these plaintiffs how this work was done, so long as the company did not trespass beyond the limits of its right of way.

It was, however, not only increasing the gauge of its track to standard, but it was introducing a new system of motive power, to wit, electricity instead of steam. No part of the structure necessary to. accomplish this end trespassed upon the lands of the plaintiffs. Since the exhaustive opinion of Mr. Justice Brown, speaking for the Supreme Court in Howley v. Central Valley R. R. Co., 213 Pa. 36, it cannot be doubted that the respondent company was in the exercise of a clear right under its charter and under the general laws of the state in making such change. Indeed, as that opinion points out, it is not only a right but it is the duty of the company in the discharge of the obligation it owes to the state, "to make use of the latest and best inventions and appliances tending to promote the comfort and safety of the public. This is notably the case in the matter of spark arresters, and is equally applicable to couplings and other contrivances."

In the light of these decisions we are unable to see how the aid of a chancellor could be successfully invoked to put such a construction upon the clause in the grant we have quoted as would make it operative to prevent a common carrier, a public servant, from discharging its manifest obligation to the state and its people, unless absolutely forced to such a conclusion by language so plain in its object, meaning and effect as to preclude the necessity for interpretation or construction. These considerations we agree will not warrant a court in rewriting a contract wherein the parties have plainly expressed their meaning. The case of Cubbage v. Pittsburg Coal Co., 216 Pa. 411, which the appellants contend largely rules this case, was expressly rested on the proposition we have last mentioned. But when the principles of construction and the broad considerations to which we have alluded are

applied to the confessedly obscure language of the grant now before us, there is left but little room to assert that in disposing of our question we have only to follow the decision last quoted.

The appellants still further complain that the respondent, in producing the current of electricity to operate its cars over its line, is producing more than its present needs require and that it is using that surplus, carried in conduits over its right of way, to bring cars of other affiliated lines loaded with passengers to its own terminus so that it may reap the profit of hauling them on its own lines over the right of way granted by the plaintiff. In this again we can see no ground for the interposition of a chancellor. The plaintiffs suffer no substantial injury thereby even if the most technical eye could discern a theoretical one. If the respondent has the right to use the land that was granted to it for every proper railroad purpose, it would not be easy to persuade a court of equity that it was guilty of any violation of the spirit or intent of the grant in thus taking practical and effective measures to multiply traffic over its own lines.

The same may be said of the only remaining ground of complaint. This is, that when carloads of passengers from affiliated lines are brought to the southern terminus of the respondent's lines, it hauls the cars in which they are comfortably seated to its other terminus in the city of Pittsburg instead of compelling them to change cars at the point where its own lines are reached.

But it is argued that when this grant was made it was not competent for a steam railroad to physically connect its tracks with those of a street railway (such power having been but recently given) and therefore such a situation could not be fairly said to have been contemplated by the parties to the grant. Conceding this to be true we have to observe that the physical connection is not made on the right of way embraced in the grant. The grantors therefore have no standing to complain of it. The only way in which they are affected by it is that it results in

their grantee hauling more passengers over its own line than it otherwise could. But this result in no sense violates either the letter or spirit of the grant, because the growth of the railroad company by all natural and legitimate means, and its consequent increase of business must have been present to the mind of the grantor when he declared that he made the grant "in consideration of the benefits and advantages to result to me from the construction, etc."

All of these various phases of the question were carefully considered by the learned trial judge, who in his opinion fairly shows that under any reasonable construction of the original grant that may be made, giving due effect to its primary and important objects and following well-established rules in construing its less important clauses, there appears no ground on which the plaintiffs' bill ought to be sustained. It was therefore properly dismissed.

The decree is affirmed.