# Ashworth *v.* Pittsburg Railway Company, Appellant.

*Street railways—Common carriers—Passengers—Rates—Classification of cities—Municipalities—Constitutional law—Local and special legislation—Act of June 7, 1907, P. L. 453.*

1. The regulation of fares to be charged for riding on a street car in a city is a municipal regulation, and this is the case whether the regulation is affected by a grant of power by the legislature to the city to make it, or is made by the legislature itself.

2. Street railways are dependent upon municipal permission and are subject to municipal regulation and control within the authority delegated by the state, but there is always in reserve the authority of the legislature to do directly what it authorizes its creature to do.

3. The Act of June 7, 1907, P. L. 453, entitled, "An Act to regulate the maximum rate of fare to be charged for transportation of passengers by street railway companies or corporations in the cities of the second class of the Commonwealth, and prescribing a penalty for the violation thereof," is not unconstitutional as local or special legislation, and does not involve an improper classification of cities.

Argued April 28, 1910. Appeal, No. 184, April T., 1908, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1908, No. 216, for plaintiff on case stated in suit of William H. Ashworth v. Pittsburg Railways Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Affirmed.

Case stated to determine the constitutionality of the Act of June 7, 1907, P. L. 453, relating to rates of fare of street railway companies in cities of the second class.

The court in an opinion by Shafer, J., found that the act was constitutional and entered judgment for plaintiff for $200.

*Error assigned* was in entering judgment for plaintiff.

*William A. Challener*, with him *Clarence Burleigh*, for appellant.—The act of 1907 is unconstitutional: Weinman v. Ry. Co., 118 Pa. 192.

*Wm. M. Hall,* for appellee.—The legislature may confer this power of rate regulation upon the municipal or local government: Freeport Water Co. v. Freeport, 180 U. S. 587 (21 Sup. Ct. Repr. 493); San Diego Land, etc., Co. v. Jasper, 189 U. S. 439 (23 Sup. Ct. Repr. 571); Old Colony Trust Co. v. Atlanta, 83 Fed. Repr. 39; Allegheny v. Millvale, etc., Ry. Co., 159 Pa. 411.

The legislature has the power to fix the rates and the extent of judicial interference is protection against unreasonable rates: Chicago & G. T. Ry. Co. v. Wellman, 143 U. S. 339 (12 Sup. Ct. Repr. 400); Stone v. Farmers' L. & T. Co., 116 U. S. 307 (6 Sup. Ct. Repr. 334); Georgia R. R. & Banking Co. v. Smith, 128 U. S. 174 (9 Sup. Ct. Repr. 47).

OPINION BY ORLADY, J., October 10, 1910:

The sole claim of the defendant is that the Act of June 7, 1907, P. L. 453, is void because it is a special and local law, such as is prohibited by the constitution of the state. The title of the act is as follows: "An act to regulate the maximum rate of fare to be charged for transportation of passengers by street railway companies or corporations, in the cities of the second class of the commonwealth, and prescribing a penalty for the violation thereof." The first section provides: "That no company or corporation operating a street railway in this commonwealth shall charge, demand or receive more than the sum of five cents per trip or passage from each passenger on said railway within the corporate limits of any city of the second class in this commonwealth for a continuous ride in one car."

For many years prior to June, 1907, the defendant company had exacted for a continuous ride a fare of ten cents between the hours of twelve o'clock midnight and four o'clock in the morning, and a fare of five cents during the other hours of the day.

The plaintiff boarded a car of the defendant company at 1:35 A. M., of July 16, 1907, and after the car had proceeded

on its trip the conductor demanded the fare of ten cents, which was refused. A fare of five cents was then tendered by the passenger and declined by the conductor, whereupon the plaintiff was ejected and this suit brought.

By the Act of June 25, 1895, P. L. 275, the cities of this commonwealth are divided into three classes, "for the purposes of legislation, regulating their municipal affairs, the exercise of certain corporate powers, and having respect to the number, character, powers and duties of certain officers thereof." By this act cities of the second class are defined as, "Those containing a population of one hundred thousand and under one million," and by this classification there were but three cities of that class in the state,—Pittsburg and Allegheny, now consolidated into one city—and Scranton. The Act of March 7, 1901, P. L. 20, "For the Government of cities of the second class" was assailed as local and void for substantially the same reasons as are urged in this case; and consideration of that question resulted in the declaration by the Supreme Court in Com. v. Moir, 199 Pa. 534, that: "Municipal corporations are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more uniformly applied than in Pennsylvania. . . . Classification of cities is a legislative and not a judicial question, and if it is based on difference of municipal affairs, and relates to and deals with such affairs, and the question of where the line shall be drawn and what differences of system shall be prescribed for differences of situation, are wholly legislative."

It was held by the learned trial judge, under the authority of Reeves v. Philadelphia Traction Co., 152 Pa.

153, that the regulation of fares to be charged for riding on a street car in a city is a municipal regulation, and that the subject of such rates is a municipal affair, and whether the regulation is effected by a grant of power by the legislature to the city to make it, or is made by the legislature itself, makes no difference.

The municipality is the mere agent of the state, and holds all of its powers subject to the will of the legislature: Pittsburg's Petition, 217 Pa. 227. While the assent of the city is required before a street railway may occupy its streets, and it may require that a designated rate of fare shall be charged: Allegheny v. Millville, etc., Street Ry. Co., 159 Pa. 411, this is so, because the legislature delegated such authority to the municipality, but every power or right that is asserted by the municipality by virtue of an act of assembly may be asserted by the legislature by direct enactment. The street railways are dependent upon municipal permission and are subject to municipal regulation and control within the authority delegated by the state, but there is always in reserve the authority of the legislature to do directly what it authorizes its creature to do: Potts v. Elevated R. R. Co., 161 Pa. 396. Under the powers inherent in every sovereignty, a government may regulate the conduct of its citizens towards each other, and when necessary for the public good, the manner in which each shall use his own property: Munn v. Illinois, 94 U. S. 113. The classification of cities being a legislative and not a judicial question: Com. v. Moir, 199 Pa. 534, we have nothing to do with the wisdom or expediency of the method adopted by the legislature: Pittsburg's Redistricting, 37 Pa. Superior Ct. 525; West Chester Boro. v. Postal Tel. Co., 227 Pa. 384; Cornman v. Hagginbotham, 227 Pa. 549.

The case of Weinman v. Pass. Ry. Co., 118 Pa. 192, is urged by the defendant as controlling here. It was a suit to recover unpaid installments on subscriptions to capital stock, and the court held that the Act of March 19, 1879, P. L. 9,—relating to the incorporation, government and

regulation of street railway companies in cities of the second and third classes,—was both special and local because it related to a few members of the general class of corporations, known as street railway companies, and because its operations were confined to particular localities, viz.: cities of the second and third class. But it was also held in the same case that: " For purposes of local government the state is subdivided into counties, townships, and other municipal and quasi municipal corporations. Each class of these subdivisions has purposes to subserve that are peculiar to it, and needs to be invested with the powers necessary to that end. Classification, therefore, upon this basis has been recognized, and a statute relating to all the townships, all the school districts, all the members of any particular class of the municipal divisions of the state has been held to be constitutional."

The particular class of municipal divisions to which the act of 1907 refers are specifically mentioned as cities of the second class, and all such are embraced in its terms. In Pittsburg's Petition, 217 Pa. 227, the fact that the cities of Pittsburg and Allegheny were the only ones in the state to which the legislation under consideration would technically apply did not alone make that act unconstitutional, as the act was held to apply to future years as well as to the present time. For the same reason the act under consideration here is not local or special, but general in that it relates to and affects all of the street railways in all the cities of the second class in the commonwealth: Cornman v. Hagginbotham, 227 Pa. 549; Schl. Dist. v. Montgomery, 227 Pa. 370; O'Donnell v. Pittsburg, 227 Pa. 14.

The argument in this case was limited to the single question of the act being local and special legislation. The judgment is affirmed.